**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **BRYAN WILLIAMS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:09CV63MLM |
| | ) | |
| **FINCK & ASSOCIATES,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the court is the Combined Motion to Dismiss and Strike or, in the alternative, Motion to Make More Definite and Certain filed by Defendant Finck & Associates ("Defendant"). Doc. 4. Plaintiff has files a Response. Doc. 6. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. Doc. 9.

## LEGAL STANDARD FOR A MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss a complaint must show "'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). See also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

Upon considering a motion to dismiss a federal "court must accept as true all of the allegations in a complaint" that are applicable to legal conclusions. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). However, pleadings which present "no more than conclusions, are not entitled to the

assumption of truth." Id. "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 1949 (quoting Twombly, 550 U.S. at 557).

Further, in regard to a Rule 12(b)(6) motion, the Supreme Court holds:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citations omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) ... see, e.g., ... Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

Twombly, 127 S. Ct. at 1964-65. See also Gregory v. Dillard's, Inc., 2009 WL 1290742 (8th Cir. May 12, 2009) (en banc) ("[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims ..., rather than facts that are merely consistent with such a right.'") (quoting Stalley v. Catholic Health Initiative, 509 F.3d 517, 521 (8th Cir.2007)).

Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." Twombly, 127 S. Ct. at 1965 (citation omitted). "The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [its] claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

To the extent it has been argued that Twombly is applicable only in the anti-trust context, the Court in Iqbal, 129 S.Ct. 1937, made it clear that Twombly is applicable in the broader context.

In civil rights actions a complaint should be liberally construed when determining whether it has stated a cause of action sufficient to survive a motion to dismiss. Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

2

## BACKGROUND

Plaintiff alleges in his Complaint that Defendant is a provider of mental health services; that Plaintiff, who is a black male, began working with Defendant at its Mexico, Missouri, facility on about October 8, 2008, as a Program Assistant/CMA; that he reported to Diane Milard and Sarah Lynn; that Ms. Milard was his immediate supervisor; that Plaintiff received excellent performance evaluations; that, commencing November 2008, Plaintiff began reporting to Deb Snyder, who replaced Ms. Milard; that upon her assuming the role of Plaintiff's supervisor, Ms. Snyder treated Plaintiff in a disparate and hostile fashion, which included making false statements about him to Plaintiff's co-workers and other supervisors and making accusations that Plaintiff had committed medical error and provided inadequate patient care; that Ms. Snyder made these false accusations and derogatory statements on a daily basis; that Plaintiff's co-workers, who were Caucasian women, suffered no such treatment; that, in November 2008, Ms. Snyder told Plaintiff that she had never worked with a black person before and that it made her uncomfortable; that on November 20, 2008, Staff Registered Nurse, Lee Ann Paladin, at the behest of Ms. Snyder, warned and disciplined Plaintiff for making a minor medical error; that Plaintiff's Caucasian female coworkers who committed similar errors were not disciplined; that, in November 2008, Plaintiff complained to his then immediate supervisor, Ms. Lynn, about the harassment and hostile treatment he was receiving; that Ms. Lynn took no action in response to Plaintiff's complaint; that after Plaintiff complained to Ms. Lynn, Ms. Snyder retaliated against Plaintiff with the goal of causing Plaintiff's termination; that, on December 2, 2008, at the behest of Ms. Snyder, Ms. Paladin warned and disciplined Plaintiff for making medical errors; that Caucasian female coworkers who committed similar errors were not disciplined; that, on December 20, 2008, at the behest of Ms. Snyder, Ms. Paladin disciplined Plaintiff for making a minor medical error; that, because this was Plaintiff's third medical error within six months, he was

3

suspended from passing medication to patients for sixty days, his wages and hours were decreased, and he was required to attend a remedial training course; that a Caucasian female who committed similar errors was required to attend the remedial training course but did not have her hours reduced; that on December 22, 2008, Ms. Lynn, based on statements made by Ms. Snyder, accused Plaintiff of stealing a gift card from a patient; that, subsequently, it was determined that another employee stole the gift card; that, in late December 2008, Plaintiff began working at another facility owned by Defendant, the Hisey House; that, while working at Hisey House, the House Manager, Linda Fennewald, trained Plaintiff regarding the use of proper restraint on the residents; that Plaintiff and his co-workers used these methods to restrain residents at Hisey House; that, on January 30, 2009, Plaintiff was informed by Ms. Lynn that he was suspended without pay and under investigation for allegedly using improper restraint techniques; and that none of Plaintiff's coworkers were investigated, disciplined, or suspended for using improper restraint techniques. Doc. 1, ¶ ¶ 9-25.

Plaintiff further alleges that despite his complaining regarding this discriminatory treatment by his supervisors, Defendant has failed to resolve Plaintiff's problems with his supervisors; that Plaintiff failed to take remedial action regarding the hostile work environment to which Plaintiff was subjected; that, as a result of the conduct described above, Plaintiff has suffered severe emotional distress and anxiety; that, after Plaintiff filed a complaint with the Missouri Commission on Human Rights ("MCHR"), employees of Defendant made intentionally false statements to the MCHR investigator; and that Defendant filed criminal charges against Plaintiff in retaliation for his filing charges of discrimination with the MCHR and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff also alleges that he filed two charges with the MCHR; that the first charge he filed was on March 5, 2009; that he received a Right to Sue Letter regarding the allegations of this charge within 90 days of his filing of the instant lawsuit; that he filed a second charge with the EEOC

on October 2, 2009; and that, at the time he filed the charge in the matter under consideration he had not received a Right to Sue Letter from the EEOC. Pursuant to this court's Order, Plaintiff has provided the court with copies of the two charges he filed with the EEOC and copies of the Right to Sue Letters he received from the EEOC regarding each of these charges.[1] Doc. 11.

In Count I of his Complaint, Plaintiff contends that Defendant's conduct, described above, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, in that Defendant discriminated against him based on his race and gender. In particular, Plaintiff alleges, in Count I, that Defendant created a hostile work environment, failed to take appropriate remedial action to prevent repeated instances of harassment, retaliated against him for filing internal complaints of discrimination, filed a criminal charge against him in retaliation for his engaging in protected activity, which protected activity included filing an administrative charge of discrimination with the MCHR/EEOC, and treated female employees more favorably than Plaintiff in regard to terms and conditions of employment. In Count II, Plaintiff contends that, by engaging in the conduct described above, Defendant discriminated against Plaintiff based on his race in violation of 42 U.S.C. § 1981. In particular, in Count II, Plaintiff alleges that Defendant created a hostile work environment, failed to take remedial action, retaliated against him for filing internal complaints of discrimination, filed a criminal complaint against him in retaliation for his engaging in protected activity, and treated Caucasian employees more favorably than Plaintiff. In Count III, Plaintiff alleges that, by engaging

---

[1] The charges which Plaintiff filed with the MCHR/EEOC addressed the allegations of Counts I and III. Additionally, he received a Right to Sue Letter regarding each of these charges. As such, Plaintiff has exhausted his administrative remedies in regard to the allegations of Counts I and III. See Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir.1996) (quoting Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir.1994)); Stuart v. Gen. Motors Corp., 217 F.3d 621, 630 (8th Cir. 2000) ("It is generally recognized that '[e]xhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.'").

in the conduct described above, Defendant discriminated against Plaintiff based on his race and gender, in violation of the Missouri Human Rights Act ("MHRA"), § 213.010 et seq. In particular, in Count III, Plaintiff alleges that Defendant created a hostile work environment, failed to take remedial action, allowed its employees and Plaintiff's coworkers to take actions to secure Plaintiff's separation in retaliation for his engaging in protected activity, allowed its employees and Plaintiff's coworkers to file a criminal complaint against Plaintiff in retaliation for his engaging in protected activity, and treated Caucasian and female employees more favorably than Plaintiff in regard to terms and conditions of employment. In Count IV, Plaintiff alleges tortious interference in that Defendant, without justification, intentionally provided Plaintiff's prospective employers and government agencies with false information; that Defendant's conduct in this regard resulted in Plaintiff's loss of unemployment compensation and the filing of criminal charges against Plaintiff; and that Plaintiff was injured as a result of Defendant's conduct.

In the pending Motion, Defendant contends that Plaintiff has failed to plead facts to support the causes of action stated in his Complaint. Also, in regard to Plaintiff's allegations of retaliation, Defendant contends that the actions of which Plaintiff complains were required by Missouri law.

## DISCUSSION

**A.     Race and Gender Discrimination in Violation of Title VII and the MHRA:**

In Count I, Plaintiff alleges that Defendant violated Title VII and, in Count III, he alleges that Defendant violated the MHRA. Title VII and the MHRA both prohibit discrimination in employment based on race and gender. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-56 (1981); McCullough v. Real Foods, Inc., 140 F.3d 1123, 1126 (8th Cir. 1998); Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107

(8th Cir. 1998); Midstate Oil Co. v. MCHR, 679 S.W.2d 842, 845-46 (Mo. 1984) (en banc).[2]

### 1. Hostile Work Environment:

In Counts I and III, Plaintiff alleges that Defendant's created a hostile work environment based on Plaintiff's gender and race. In order to establish gender or race-based hostile work environment under Title VII and the MHRA, a plaintiff must establish:

> 1) membership in a protected group, 2) the occurrence of unwelcome harassment, 3) a causal nexus between the harassment and [his] membership in the protected group, 4) the harassment affected a term, condition, or privilege of employment, and 5) the employer knew or should have known of the harassment and failed to take prompt remedial action. Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir.1999).

Jacob-Mua v. Veneman, 289 F.3d 517, 522-23 (8th Cir. 2002).

This fifth element is a factor only when the harassment was at the hands of a plaintiff's coworkers rather than of a supervisor. Engel v. Rapid City Sch. Dist., 506 F.3d 1118, 1113 (8th Cir. 2007); Jacob-Mua, 289 F.3d at 522. Indeed, "[m]ore than a few isolated incidents [of harassment] are required." Meritor Savs. Bank v. Vinson, 477 U.S. 57, 67 (1986).

In Counts I and III of his Complaint, Plaintiff alleges that he was harassed based on his gender and race; he describes in detail the form that this harassment took, including his being disciplined, having criminal charges filed against him, and his being required to have special training; he alleges a nexus between the harassment and his race and gender by virtue of a statement he attributes to his supervisor regarding his race and by virtue of specific instances of disparate treatment regarding himself and Caucasian female employees; he alleges that the harassment affected terms and conditions

---

[2] "Decisions under the various federal employment discrimination statutes are applicable and authoritative under the MHRA as well as federal law." Lane v. Ground Round, Inc., 775 F. Supp. 1219, 1223 (E.D. Mo. 1991). See also Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 715 (8th Cir. 2000); Heintzelman v. Runyon, 120 F.3d 143 n.4 (8th Cir. 1997); Smith v. St. Louis Univ., 109 F.3d 1261, 1264 n.2 (8th Cir. 1997); Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. 1994); Marks v. School District of Kansas City, Missouri, 941 F. Supp. 886, 892 (W.D. Mo. 1996).

of his employment as the alleged harassment included Defendant's disciplining, suspending, and discharging Plaintiff and reducing his pay; and, in regard to harassment by coworkers, Plaintiff alleges that he informed Defendant of the harassment and that Defendant failed to take remedial action. As such, the court finds that Plaintiff has sufficiently alleged a cause of action for harassment based on his gender and race and that he has given Defendant fair notice of what his claims are and the grounds upon which they rest. See Twombly, 127 S. Ct. at 1964; Meritor, 477 U.S. at 67; Engel, 506 F.3d at 1113; Jacob-Mua, 289 F.3d at 522-23.

### 2. Retaliation:

In Counts I and III, Plaintiff alleges that Defendant retaliated against him for his engaging in protected activity. In order to establish a prima facie case of retaliation in violation of Title VII and the MHRA, a plaintiff must show that: (1) he engaged in conduct protected by Title VII; (2) the employer took a material adverse action against the plaintiff; and (3) a causal connection existed between the retaliation and the adverse action. Burlington N. & Santa Fe Ry. Co v. White, 548 U.S. 53, 68 (2006); Robinson v. Potter, 453 F.3d 990, 994 (8th Cir. 2006). In order to be considered "materially adverse," an employer's actions "need to dissuade a reasonable [employee] from engaging in protected activity." Id. In deciding whether an action would be adverse to a "reasonable employee," the court must consider the specific context of the action. Burlington, 548 U.S. at 69.

Plaintiff alleges that he filed internal complaints concerning discrimination based on his race and gender by his supervisors; that he filed a charge with the MCHR/EEOC; and that as a result of his engaging in these activities he was disciplined, had his pay and hours reduced, and was indefinitely suspended without pay. He also alleges that Defendant wrongfully accused him of theft, filed criminal charges against him, and placed him under investigation. Plaintiff alleges a causal connection between his protected activity and the actions taken against him by Defendant based on a specific statement

made by his supervisor and by his allegations of disparate treatment. Furthermore, the dates of Defendant's alleged retaliatory conduct in conjunction with the dates upon which Plaintiff alleges he engaged in protected activity are factors relevant to establishing a nexus between Plaintiff's protected activity and Defendant's conduct. See Sherman v. Runyon, 235 F.3d 406, 410 (8th Cir. 2000) ("The timing of a plaintiff's discharge in relation to his protected activity can sometimes establish causation for the purpose of establishing a prima facie case.") (citing Smith v. Riceland Foods, Inc., 151 F.3d 813 (8th Cir. 1998).

The Supreme Court has recognized that the anti-retaliation provision of Title VII "is not limited to discriminatory actions that affect the terms and conditions of employment" because "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace." Burlington, 548 U.S. at 63-64. The Court holds that "a plaintiff [alleging retaliation] must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (C.A.D.C. 2006) (internal quotations omitted). Thus, to the extent Plaintiff alleges that, in addition to terms and conditions of employment, Defendant's retaliation took the form of criminal charges being filed against him, Plaintiff has alleged a cause of action. As such, the court finds that Plaintiff has sufficiently alleged a cause of action for unlawful retaliation and that he has given Defendant fair notice of what his claims are and the grounds upon which they rest. See Twombly, 127 S. Ct. at 1964; Burlington, 548 U.S. at 68; Robinson, 453 F.3d at 994.

### 3. **Disparate Treatment:**

Plaintiff alleges that Defendant violated Title VII and the MHRA by treating him differently from Caucasian female coworkers based on his race and gender. Title VII prohibits employers from treating employees differently with respect to the "terms, conditions, or privileges" of employment. Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 568 (8th Cir. 2000) (citing 42 U.S.C. § 2000e-2(a)(1)). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Id. at 568-69 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097, 2111 (2000)). In regard to disparate treatment:

> A plaintiff may prove allegations of disparate treatment by demonstrating that she was treated less favorably than similarly situated employees outside the plaintiff's protected class. See Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 259-60 (8th Cir.1996); Johnson v. Legal Servs. of Arkansas, Inc., 813 F.2d 893, 896 (8th Cir.1987). The test for whether employees are "similarly situated" to warrant a comparison to a plaintiff is a "rigorous" one. Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir.1994). For discriminatory discipline claims, "[e]mployees are similarly situated when they 'are involved in or accused of the same offense and are disciplined in different ways.'" Id.

Id.

Among other things, in support of his claim of disparate treatment, Plaintiff specifically alleges that his female coworkers, who used the same restraint techniques he used, were not disciplined and that a named Caucasian female coworker who committed medical errors similar to those made by Plaintiff was required to attend the same training as Plaintiff but did not have her hours reduced as did Plaintiff. As such, the court finds that Plaintiff has sufficiently alleged his claims of disparate treatment for purposes of withstanding a motion to dismiss for failure to state a cause of action and that he has given Defendant fair notice of what his claims are and the grounds upon which they rest. See Twombly, 127 S. Ct. at 1964; Palesch, 233 F.3d at 568. Because Plaintiff has sufficiently alleged

a cause of action in regard to allegations of Counts I and III, including allegations of a hostile work environment, retaliation, and disparate treatment in violation of Title VII and the MHRA, the court finds that the pending Motion should be denied in regard to Counts I and III.

**B.  Count II, 42 U.S.C. § 1981:**

In Count II, Plaintiff contends that Defendant violated 42 U.S.C. § 1981 by creating a hostile work environment *due to his race*, by failing to take appropriate remedial action regarding his being harassed, by retaliating against him for filing internal complaints of discrimination, by retaliating against him for his engaging in protective activity by virtue of his filing an administrative charge of discrimination with the MHRC, and by treating Caucasian women more favorably than him in regard to terms and conditions of employment. Section 1981 provides:

> (a) Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Thus, § 1981 "affords a federal remedy against discrimination in private employment on the *basis of race*," as does Title VII, 42 U.S.C. § 2000e-2(a)(1). Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 457-58, 460 (1975) (emphasis added). In Johnson, the Supreme Court sanctioned the prosecution of causes of action pursuant to both § 1981 and Title VII by the same plaintiff based upon the same facts. 421 U.S. at 459-62; Stephens v. South Atlantic Canners, Inc., 848 F.2d 484, 489 (4th Cir.1988). The elements of a cause of action under Title VII and § 1981 have been construed to be nearly identical. Kim v. Nash Finch Co., 123 F.3d 1046, (8th Cir. 1997). The standards to be applied in evaluating a claim of racial discrimination in employment, therefore, are the same in § 1981 actions as those applied in actions brought pursuant to Title VII. See e.g., Wilson

11

v. Legal Assistance of North Dakota, 669 F.2d 562, 563-64 (8th Cir. 1982). Thus, the facts relevant to a theory of recovery under Title VII are relevant to a theory of recover based on § 1981. Kim, 123 F.3d at 1063 ("[T]he same evidence relevant to the [] theory of recovery [under] § 1981 [] was relevant to the theory of recovery pled [under] Title VII. This is because [] Title VII and § 1981 set forth parallel, substantially identical, legal theories of recovery in cases alleging intentional discrimination in employment on the basis of race.").[3] Because the court has found above that Plaintiff has sufficiently alleged a cause of action under Title VII and under the MHRA, based on his race, the court further finds that Plaintiff has sufficiently alleged a cause of action under § 1981 to withstand a motion to dismiss. See Twombly, 127 S. Ct. at 1964; Kim, 123 F.3d at 1063.

**C.    Tortious Interference:**

In Count IV, Plaintiff alleges tortious interference, in that Defendant, by engaging in the conduct above, intentionally provided false or dubious information to government agencies which resulted in the loss of his employment and the filing of criminal charges against him. Defendant contends that Count IV should be dismissed for failure to state a cause of action or that, in the alternative, the court should order Plaintiff to make a more definite statement. Defendant also contends that the court should strike Count IV based on Mo. Rev. Stat. § § 630.163, 630.165 which requires reporting of abuse or neglect to the Missouri Department of Mental Health. Defendant

---

[3]    There are, however, differences between Title VII and § 1981. As stated by the court in Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997):

> They are not co-extensive in coverage (for example, Title VII does not cover all employers). Title VII requires exhaustion of administrative remedies, and the statutes of limitations are different. Most importantly, the amount of compensatory and punitive damages is limited under Title VII but not under § 1981.

contends that is immune from suit pursuant to tortious interference based on these statutes because it was required to report Plaintiff's conduct to the proper authorities.

As stated by the court in Horizon Memorial Group, L.L.C. v. Bailey, 280 S.W.3d 657, 662 (Mo. Ct. App. 2009):

> A claim for tortious interference ... requires the plaintiff to establish "'(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct.'" Envirotech, Inc. v. Thomas, 259 S.W.3d 577, 590 (Mo. App. 2008) (citation omitted). To establish the absence of justification element, the plaintiff must establish that the defendant lacked a legal right to justify his actions. Id.

In Count IV, Plaintiff alleges that he became employed by Defendant on October 8, 2008, and that Defendant intentionally gave false information to a government entity. To the extent Plaintiff alleges he lost his job with Defendant based on Defendant's own conduct Plaintiff has failed to state a cause of action because under Missouri law:

> [A] cause of action for tortious interference with contract generally lies only against third parties who are not parties to the contract. In the present case, both plaintiff and defendant are parties to the alleged contract. Consequently, a cause of action by defendants against plaintiffs for tortious interference with contract will not lie.

In re Colbert, 43 B.R. 508 (Bkrtcy. E.D. Mo. 1984). See also Kelly v. State Farm Mut. Auto. Ins. Co., 218 S.W.3d 517, (Mo. Ct. App. 2007) ("[T]he tort of interference with a business expectancy cannot lie against a party to a contract which creates the business expectancy.") (citing Jurisprudence Wireless Commc'ns, Inc. v. CyberTel Corp., 26 S.W.3d 300, 302 (Mo. Ct. App. 2000); Charter Broad. Group Ltd. v. K-Country Inc., 2005 Ohio 168 (Ohio Ct. App. 2005) ("A claim of tortious interference with contract arises when one party to a contract is induced to breach the contract by the malicious acts of a third person who is not a party to the contract.") (other citations omitted).

13

To the extent Plaintiff alleges that Defendant interfered with his relationship with third parties, Plaintiff does not specify the names of employers who allegedly refused to hire him because of Defendant's conduct. The court finds, therefore, that Plaintiff does not allege the specific elements of a cause of action for tortious interference with a contract or business relationship nor does he allege facts to support such a cause of action. As such, the court finds that Count IV should be dismissed for failure to state a cause of action. See Twombly, 127 S. Ct. at 1964; Colbert, 43 B.R. 508.

**D.     Defendant's Immunity from Suit:**

Defendant contends that it is immune from suit based on actions which Plaintiff contends violates Title VII, the MHRA, and § 1981 because Defendant was required, by statute, to report Plaintiff's conduct to the Missouri Department of Mental Health.[4] Mo. Rev. Stat. § 630.165 does impose an obligation upon Defendant to report abuse at its facilities. Additionally, this statute provides for criminal penalties for false reporting of abuse and Mo. Rev. Stat. § 630.167.4 provides:

> Anyone who makes a report pursuant to this section or who testifies in any administrative or judicial proceeding arising from the report shall be immune from any civil liability for making such a report or for testifying unless such person acted in *bad faith or with malicious purpose*.

(emphasis added).

The veracity of the reports made by Defendant regarding Plaintiff's conduct as well as Defendant's motivation for filing such reports are at issue in the matter under consideration. Moreover, Defendant's conduct which Plaintiff alleges violated Title VII, the MHRA, and § 1981

---

[4] Although Defendant's Memorandum is somewhat ambiguous in its posing an argument that Defendant is entitled to immunity, the court will assume that Defendant intended to assert its immunity in regard to all of Plaintiff's allegations, including the allegation of Count IV for tortious interference. As the court has found that Plaintiff has failed to state a cause of action in Count IV, the court will not consider Defendant's allegation of immunity as it relates to Count IV.

14

involves conduct other than Defendant's reporting to the Missouri Department of Mental Health. Under such circumstances, Defendant's argument that the court should dismiss Counts I, II, and III based on its alleged immunity is without merit.

## CONCLUSION

For the reasons more fully set forth above, the court finds that Plaintiff has sufficiently alleged a cause of action in Counts I, II, and III, and that Defendant's Combined Motion to Dismiss and Motion to Strike, or in the alternative, Motion to Make More Definite and Certain should be denied in regard to these Counts. Additionally, the court finds that Plaintiff has failed to state a cause of action in Count IV and that Count IV should be dismissed. As such, the court finds that Defendant's Motion to Dismiss should be granted in regard to Count IV.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Combined Motion to Dismiss and Motion to Strike, or in the alternative, Motion to Make More Definite and Certain is **GRANTED**, in part, and **DENIED**, in part; Doc. 4

**IT IS FURTHER ORDERED** that Defendant's Combined Motion to Dismiss and Motion to Strike, or in the alternative, Motion to Make More Definite and Certain is **DENIED**, as to Counts I, II, and III of Plaintiff's Complaint;

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss is **GRANTED**, as to Count IV of Plaintiff's Complaint;

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike, and, in the alternative, Motion to Make More Definite and Certain as to Count IV, is **DENIED**, as moot.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of May, 2010.